# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GARY SCHMIDT,

     *Plaintiff*,

*v.*                        CASE NO. 09-CV-12808

COMMISSIONER OF           DISTRICT JUDGE AVERN COHN
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits, and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 16.)

Plaintiff was 35 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 19, 65.) Plaintiff's relevant employment history includes work as a construction laborer for 10 years and as a self-employed taxidermist from 2003 to the present. (Tr. at 84.) Plaintiff filed his first application for a period of disability and disability insurance benefits on March 18, 2002, alleging that he had been disabled since August 15, 2000. That application was denied by initial determination dated August 16, 2002. Plaintiff requested and was granted a hearing and appeared before Administrative Law Judge ("ALJ") Douglas N. Jones on March 1, 2004. ALJ Jones found that although Plaintiff had a severe back impairment, he could perform sedentary work and therefore was not disabled. Plaintiff did not appeal this decision, so, based on the principles of *res judicata*, it is binding as to Plaintiff's disability claim through July 12, 2004.[2]

Plaintiff filed the instant claims on August 19, 2004, alleging that he became disabled on July 15, 2000, one month earlier than the date claimed on his first application. (Tr. at 65.) The claim was denied at the initial administrative stages. (Tr. at 40.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of back, discogenic and degenerative, and other and unspecified arthropathies as possible bases of disability. (*Id.*) On March 13, 2007, Plaintiff appeared with counsel before ALJ Peter N. Dowd, who considered the application for benefits *de novo*. (Tr. at 15-29.) In a decision dated April 25, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 29.) Plaintiff requested a review of this decision on April 30, 2007. (Tr. at 11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r*

---

[2]*See Califano v. Sanders*, 430 U.S. 99, 107-08, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977) (no jurisdiction to review refusal to reopen absent a constitutional claim); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997); *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981), *cert. denied*, 454 U.S. 1087 (1981) (discussing *res judicata*).

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 9, 2009, when, after the review of additional exhibits[3] (Tr. at 418-46), the Appeals Council denied Plaintiff's request for review. (Tr. at 3-6.)   On July 16, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.      Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).   The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).   If relief is not found during the administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.

---

[3]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2005).  *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  *See also Mullen*, 800 F.2d at 545.  The scope of the court's review is limited to an examination of the record only.  *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and

children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.      ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that res judicata precluded him from considering whether Plaintiff could have been disabled prior to July 13, 2004. (Tr. at 18.) The ALJ next concluded that as to his claim for disability benefits, Plaintiff only met the insured status requirements of the Social Security Act through March 31, 2006.[4] (Tr. at 21.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar and thoracic spine and bilateral shoulder impingement syndrome were "severe" within the meaning of the second sequential step. (Tr. at 22.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 22-23.) At step four, the ALJ found that Plaintiff lacked the residual

---

[4]In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423 (d)(1)(A). Federal courts have therefore held that "[m]edical evidence is relevant to prove a disability only while the claimant enjoyed insured status. However, medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Soc. Sec.,* 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975)). *See also Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976).

functional capacity to perform his past relevant work.  (Tr. at 27.)  At step five, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work.  (Tr. at 22-26.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff continued to be seen by Gavin Awerbach, M.D.  Dr. Awerbach opined that after having "reviewed his social security determination . . . [the ALJ] . . . contradicted himself [because he] states the detailed findings in my notes and then reports that they are 'vague.'" (Tr. at 315.)  Dr. Awerbach also noted Plaintiff's back pain, that Plaintiff "completed his series of epidural blocks" and that Plaintiff is a "part-time taxidermist."  The doctor recommended that Plaintiff continue with a home exercise program.  He also prepared a written restriction in an effort to assist Plaintiff in finding work.  (*Id.*)  Plaintiff was described as "compliant" and with "no aberrant behaviors."  (*Id.*)

A psychiatric review technique conducted in October 2004 found Plaintiff had no severe mental impairments.  (Tr. at 350.)  A "DDS Consultation Form completed the same month also concluded that Plaintiff did not suffer from any severe mental impairments."  (Tr. at 364.)  A physical Residual Functional Capacity ("RFC") assessment performed in October 2004 concluded that Plaintiff is able to lift "slightly" less than 10 pounds occasionally and frequently, that he is able to stand or walk for 2 hours in an 8-hour workday, sit for about 6 hours in an 9-hour workday, and that he is unlimited in his ability to push or pull.  (Tr. at 366.)  The assessment also concluded that Plaintiff is occasionally limited in all the postural areas, such as climbing, stooping, and kneeling, but that no manipulative, visual, communicative or environmental limitations were

found.  (Tr. at 367-69.)  There was no treating or examining source statement to compare to the assessor's findings.  (Tr. at 371.)

In August 2005, Plaintiff was examined by Abbas Bekhrad, M.D.,for urinary frequency; prostate, renal ultrasounds, and cystometrograms were all normal.  (Tr. at 412.)  Chest and abdominal x-rays taken in October 2005 were normal.  (Tr. at 408.)  In 2006, Plaintiff participated in a program at the Insight Recovery Center for alcohol dependence.  (Tr. at 409.)  An EMG performed in April 2006 showed "[b]ilateral L5-S1 radiculopathy."  (Tr. at 415.)

In January and July 2006, Dr. Awerbach "stressed functional restoration rather than complete pain relief as a goal of treatment" and reviewed home isometric strengthening and range of motion exercises.  (Tr. at 422, 428.)  In mid-January 2006, Plaintiff underwent an echocardiogram and doppler flow study of his heart, which indicated mild abnormalities of the mitral valve, but normal aortic valve and normal size and function of the left ventricle and no effusion of the pericardium.  (Tr. at 417).  In May 2006, Dr. Awerbach indicated he "would like [Plaintiff] to begin physical therapy consisting of modalities and then progressing into a home exercise program," and later that month noted that Plaintiff "lost his slip again for physical therapy," so Dr. Awerbach gave him another one.  (Tr. at 424-25.)  In August 2006, Dr. Awerbach "encouraged [Plaintiff's] weightlifting in hopes of elevating muscle mass and testosterone level." (Tr. at 420.)  Plaintiff was also given lumbar facet injections for his back pain.  (*Id.*)

An MRI taken in November 2006 to evaluate Plaintiff's low testosterone level and fatigue was normal except for the presence of a "small less enhancing lesion in the left side of the pituitary gland measuring 3-4 mm in size most consistent with pituitary microadenoma." (Tr. at 414.)  After review of this test, Dr. Awerbach placed Plaintiff on a prescription medicine for the deficiency.

(Tr. at 418.)  Dr. Awerbach noted that although Plaintiff "does not sleep well[,] he has been out hunting [and] getting up early in the morning as well."  (Tr. at 418.)

On March 15, 2007, Dr. Awerbach noted that he had referred Plaintiff to an endocrinologist and that he "do[es] not feel that [Plaintiff] is capable of working in any significant capacity."  (Tr. at 432.)  Dr. Awerbach wrote a letter on behalf of Plaintiff dated March 27, 2007, in which he noted Plaintiff's medical history and indicated that Plaintiff has fatigue caused by his need to "use the bathroom every two hours during the day or night," sleep apnea, and endocrine abnormalities. (Tr. at 431.)  Dr. Awerbach also indicated that Plaintiff has "poor concentration and attention deficit disorder type symptoms."  (*Id.*)  Dr. Awerbach also stated that Plaintiff has "trouble standing or walking and also has difficulty bending or twisting" and that Plaintiff "should avoid climbing, working with machinery, working in open spaces, or doing any other activity where he could potentially harm himself if he would become dizzy and lose his balance suddenly."  (*Id.*)

Plaintiff indicated in his daily activity report that he prepares simple meals and that he does laundry and dishes with some help from others.  (Tr. at 93.)  Plaintiff also drives, shops for groceries and personal items once or twice a week, and is able to manage his own finances. (Tr. at 94.)  Plaintiff watches television, reads, watches movies with his daughter, and spends time visiting with others on the phone or in person several times a week.  (Tr. at 95.)  Plaintiff also testified that he is taking two classes on three days of the week, that he does the housework, uses a riding lawnmower to mow his yard, and deer hunts with a rifle.  (Tr. at 484-85, 487-88, 491.) When the ALJ asked Plaintiff whether his depression is currently worse or about the same as the depression he had when he was able to work two and one-half years ago, Plaintiff indicated it was "about the same."  (Tr. at 498.)

The Vocational Expert ("VE") was asked to assume a person with Plaintiff's background and one who has

> a maximum Residual Functional Capacity to perform sedentary exertional work activities that provide an option to sit or stand at will, and involve only occasional, that is up to 33% of the time, use of foot controls, bending at the waist or knees, twisting of the torso, kneeling, climbing, overhead reaching, and that individual can do no crawling, no climbing of ladders, and no use of vibrating machinery or tools.

(Tr. at 504.) The VE testified that such a person could perform surveillance system monitor, cashier, and telemarketer jobs that exist in significant specific numbers in the lower peninsula of Michigan. (Tr. at 504-05.) The VE further testified that if such a person also needed to take naps during the day, that person would not be capable of performing any work. (Tr. at 505.) Finally, the VE stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 505.)

## F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform sedentary work. (Tr. at 22-26.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ did not properly evaluate Plaintiff's combination of impairments and how they limit Plaintiff's ability to perform basic work activities. (Doc. 11 at 9-10.) Plaintiff further contends that the ALJ failed to consider Plaintiff's need to nap in the afternoon, his discogenic problems, and endocrine level issues. (Doc. 11 at 9.) In addition, Plaintiff contends that the ALJ did not give proper weight to the medical evidence offered by Plaintiff's treating physician, Dr. Awerbach, i.e. that Plaintiff's endocrine abnormalities cause fatigue, poor concentration and depression, and that Plaintiff must use the bathroom every two hours, which also causes fatigue. (Doc. 11 at 9-11.)

Dr. Awerbach stated on March 15, 2007, that he "do[es] not feel that [Plaintiff] is capable of working in any significant capacity." (Tr. at 432.) Since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," I suggest that Dr. Awerbach's conclusion that Plaintiff was not able to work was properly discounted by the ALJ. *See Kidd v. Commissioner,*

283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). I further suggest that the ALJ properly discounted Dr. Awerbach's medical opinions and chose not to give them controlling weight because they were not well-supported and were inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). Although Dr. Awerbach wrote a letter on behalf of Plaintiff dated March 27, 2007, in which he indicated that Plaintiff has fatigue caused by his need to "use the bathroom every two hours during the day or night" (Tr. at 431), the only examinations conducted because of urinary frequency, i.e., renal ultrasounds and cystometrograms, were all normal. (Tr. at 412.) Although Dr. Awerbach stated that he believes Plaintiff suffers from depression and poor concentration, the medical evidence reveals that Plaintiff does not suffer from any severe mental impairment. (Tr. at 350, 364, 431.) In addition, Plaintiff's own testimony was that his depression is "about the same" as it was when he was able to work. (Tr. at 498.)

As to physical impairments, Dr. Awerbach himself continued to suggest that Plaintiff increase his activities when Dr. Awerbach "stressed functional restoration rather than complete pain relief as a goal of treatment" and reviewed home isometric strengthening and range of motion exercises. (Tr. at 422, 428.) Dr. Awerbach indicated that he "would like [Plaintiff] to begin physical therapy consisting of modalities and then progressing into a home exercise program" and even recommended weightlifting. (Tr. at 420, 424, 425.)

The limitations Dr. Awerbach suggested, i.e., that Plaintiff avoid bending or twisting, climbing, working with machinery, working in open spaces, or doing any other activity where he could potentially harm himself if he would become dizzy and lost his balance suddenly, were incorporated into the hypothetical. (Tr. at 431, 504.) I therefore suggest that the hypothetical was

in harmony with the objective record medical evidence as well as the daily activities described by Plaintiff himself, i.e., that he prepares simple meals, does laundry and dishes with some help from others, drives, shops for groceries and personal items once or twice a week, is able to manage his own finances, watches television, reads, watches movies with his daughter, spends time visiting with others on the phone or in person several times a week, that he is taking two classes on three days of the week, that he does the housework, uses a riding lawnmower to mow his yard, hunts deer with a rifle, and is a part-time taxidermist. (Tr. at 93-95, 315, 484-85, 487-88, 491.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Finally, I suggest that although Plaintiff claims a need to nap in the afternoon, there is no medical evidence supporting that need and, thus, the ALJ did not err in finding Plaintiff only partially credible with respect to his claims of disabling pain based on the lack of objective medical evidence to confirm the severity of the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

For all these reasons, after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                              s/ Charles E. Binder
                                         CHARLES E. BINDER
Dated: April 20, 2010                    United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  April 20, 2010                    By    s/Patricia T. Morris
                                         Law clerk to Magistrate Judge Binder